UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 05-30030-MAP

UNITED STATES OF AMERICA,

v.

CHARLES A. HOWARD

**SENTENCING MEMORANDUM OF THE DEFENDANT,
CHARLES A. HOWARD**

Charles A. Howard, the defendant in the above-referenced, hereby comments upon the Presentence Report in this matter, as revised on July 19, 2006 ("PSR"), and respectfully requests that his sentence reflect the considerations set forth below.

1.  *The Defendant.*

Charles A. Howard was born on Christmas day, 1972. He is thirty-three years old. Charles has been married for fourteen years to Louise Howard, also thirty-three years of age. The Howards are the parents of three children, Joshua, 14; Shelbie, 9 and Kristian, 2. The Howard family resides in a home they rent in a working class neighborhood in Springfield. Although not yet realized, the Howards' dream of owning their own home.

Charles is a 1991 graduate of Putnam High School. He has attended college at STCC and AIC but has yet to earn a degree. During the past 10 years, he has been consistently employed on a full time basis, sometimes working two jobs to make ends meet. His employment has included restaurant services and retail. Within the past year, Charles

1

obtained a commercial drivers license and has been employed since that time as a long haul trucker, earning approximately $35,000 per year. He is the sole breadwinner for his family.

Charles has struggled with bouts of depression since the passing of his close relatives, his grandmother in 1999 and his grandfather and mother-in-law in 2001. To address this, he has been prescribed and takes Prozac. See attached Riverbend Medical Record dated March 7, 2005.

2. *The Offense.*

Charles was involved in one isolated transaction.[1] He plead guilty to conspiracy to deal and dealing in firearms without a license, in violation 18 U.S.C. §§ 371 and 922 (a)(1), and being a felon in possession of a firearm.[2] The firearm involved was a .45 caliber pistol. The offense occurred on February 24, 2005 as part of a sting operation involving a controlled buy coordinated by law enforcement officials. The gun was delivered by Charles to his boyhood friend, his codefendant in this case, Michael Cecchetelli. At the request of Cecchetelli, and in recognition of their friendship, Charles was persuaded to take the gun to a place where the CW agreed to purchase the gun from Cecchetelli. The CW paid Cecchetelli $400 for the gun. Charles did not receive the proceeds.

The firearm was otherwise entirely legal, was not stolen and was without an. Law

---

[1] Although the indictment in this case was returned in connection with several others related to a sweep of the Latin Kings organization, there is no allegation by the government or in the PSR which implicates Charles as in any way involved with that enterprise.

[2] The predicate felony was a Massachusetts conviction for larceny over $250, an offense that occurred in Holyoke more than thirteen years ago, when Charles was twenty-two years old. His criminal history is otherwise remarkable only for its brevity and comparatively minor content. His criminal history score is 0 and his Criminal History Category is I.

enforcement authorities immediately confiscated the firearm, which was immediately taken from circulation. There is no evidence that the firearm had been used in any other crime. Nor is there any suggestion that Charles engaged in any other firearms transaction or participated in any other criminal activity.

3.  *The Sentencing Guidelines.*

Based upon a Total Offense Level of 12 and a Criminal History of I, the PSR concludes that the Guideline Sentencing Range is 10 to 16 months. This places Charles in Zone C. Zone C offenders are to serve either a "sentence of imprisonment" or a "sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention ... provided that at least one-half of the minimum term is satisfied by imprisonment." id.  USSG § 5C1.1(d)(2).

There are grounds for departure from this Guideline Range. A court can depart downward, from Sentencing Guidelines sentence, for "extraordinary family obligations." In this regard, the court must measure the defendant against all other defendants, no matter the crime of his or her conviction, and determine whether he or she is "irreplaceable." See *U.S. v. Lacarubba*, 184 F.Supp.2d 89 (D. Mass. 2002) and cases cited. See USSG § 5H1.6.

Section 5H1.6 departures seem to involve some combination of a defendant's financial and non-financial obligations, including caretaking responsibilities and family members' medical needs, which require courts to engage in fact-specific inquiries. *Compare United States v. Haversat*, 22 F.3d 790, 797 (8th Cir.1994), *cert. denied,* 516

U.S. 1027 (1995)(defendant's wife's potentially life-threatening psychiatric condition justified departure); *United States v. Gaskill,* 991 F.2d 82, 86 (3d Cir.1993)(defendant's responsibility for mentally ill wife might justify departure); *United States v. Johnson,* 964 F.2d 124, 129 (2d Cir.1992)(sole responsibility for raising four children justified departure); *United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991)(twelve-year marriage, two children, living with disabled, dependent father and grandmother justified departure); *United States v. Pena,* 930 F.2d 1486, 1494-95 (10th Cir.1991)(single parent of infant and sole supporter of sixteen-year-old daughter and daughter's infant justified departure); *United States v. Big Crow,* 898 F.2d 1326, 1332 (8th Cir.1990)(solid family and community ties and "consistent efforts to lead a decent life in [the] difficult environment" of an Indian reservation justified departure)

In this case, Charles provides the sole basis of financial support for his family. Two of his children have ADHD. His oldest son has become involved in the juvenile criminal justice system. When measured against all defendants, and apart from this incident, Charles has an exemplary record as a supporting father and husband. The fact the Charles has a job and a solid employment history, when coupled with the demonstrated financial and emotional needs of his family which he seems to have uniquely satisfied, seem to support the conclusion that he is in fact irreplaceable in these circumstances.

Alternatively, the Court may depart downward where Charles criminal conduct can be characterized as aberrant behavior. Under § 5K2.20 of the Guidelines, a sentence

4

below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. The departure is available if only an isolated criminal transaction is involved, the defendant did not engage in significant planning, the offense was of limited duration and the offense represents a marked deviation form an otherwise law-abiding life. However, the court may not depart below the guideline range on this basis if (1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm[3] or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point..., or (5) the defendant has a prior federal, or state, felony conviction, regardless of whether the conviction is otherwise countable under the Guidelines.

The circumstances of isolated transaction involved in this case, together with Charles otherwise generally law abiding social history, qualify him for a departure under § 5K2.20. The term "state felony" is not defined in the Guidelines for purposes of § 5K2.20. The penalty for larceny over $250 may be "a fine of not more than twenty-five thousand dollars and imprisonment in jail for not more than two years." See General Laws, Ch. 266, § 30(1). Charles was sentenced only to probation. See also, General Laws, Ch. 274, § 1 ("A crime punishable by death or imprisonment in the state prison is a felony. All other crimes are misdemeanors."). Since the Guidelines are subject to the

---

[3] The term "otherwise used" a firearm means more than simply possessing a firearm in the offense. See Application Notes §§ § 5K2.20 (1) and 1B1.1 (I).

general rules of statutory construction, the Rule of Lenity is applicable in construing them. See *United States v. Luna-Diaz*, 222 F.3d 1, 3 n. 2 (1st Cir.2000) (noting that where a Guideline provision is ambiguous, the Rule of Lenity should be invoked to resolve the ambiguity in favor of the criminal defendant); see also *United States v. Diaz*, 989 F.2d 391, 393 (10th Cir.1993)(adopting the Rule of Lenity for interpretation of Guidelines).

Both § 5H1.6 and § 5K2.20 allow for departure in this instance. By departing downward two offense levels to 10, Charles would face a Guideline range of 6 to 12 months and would be in Zone B. Zone B offenders are eligible to serve either a "sentence of imprisonment" or a "sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention ... or a sentence of probation that includes a condition or combination of conditions the substitute intermittent confinement, community confinement or home detention for imprisonment . . ." USSG § 5C1.1( c ). As a Zone B offender, Charles could be placed in community confinement or home detention. This would allow him to continue his employment to support his family. This would also allow him closer proximity to his family to meet their emotional needs and his family responsibilities. Finally, this would avoid the expense to the government of incarcerating Charles.

*4.   The goals of the Sentencing Reform Act would be satisfied by a Zone B Guideline Range of 6 to 12 months allowing Charls to continue his employment.*

Irrespective of the Court's Guideline calculation, the Court must be mindful of the goals of the Sentencing Reform Act. As Judge wrote in his dissent in *U.S. v. Jimenez-Beltre*, 440 F.3d 514, 528 (1st Cir. 2006):

> Many commentators argue that by giving the guidelines controlling weight, and abdicating the responsibility to take account of the other section 3553(a) factors, courts "effectively mak[e] the guidelines as binding as they were before *Booker*," thereby violating *Booker's* constitutional command. Mccolgin & Sweitzer, *supra*, at 53; *see also* Frank O. Bowman, III, *Beyond Band-Aids: A Proposal for Reconfiguring Federal Sentencing After Booker*, 2005 U. Chi. Legal F. 149, 183 (2005). Justice Stevens made a similar point in his dissent in *Booker*, stating that the "sentencing range is now nothing more than a suggestion that may or may not be persuasive to a judge when weighed against the numerous other considerations listed in [section 3553(a)]."243 U.S. at 300, 37 S.Ct. 273 (Stevens, J., dissenting in part). Justice Scalia wrote to the same effect, stating that "logic compels the conclusion that the sentencing judge, after considering the recited factors (including the Guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise ··· its opinion would surely say so." *Id.* at 305, 37 S.Ct. 273 (Scalia, J., dissenting in part). To be sure, these are dissents to the remedial decision in *Booker*, which does not elaborate on its statement that the guidelines must be "consider[ed]" post- *Booker*. But given the close divisions on the Court about the post- *Booker* role of the guidelines, and given the new composition of the Court, it would be foolhardy to ignore the constitutional dangers of adopting an approach to the guidelines post- *Booker* that approximates, in a new guise, the mandatory guidelines.

The Supreme Court in Booker held that judges are nonetheless required to take account of the Guidelines, together with other sentencing goals identified in the Sentencing Reform Act. See 18 U.S.C.A. § 3553(a) (Supp. 2004).[4] The Court wrote that

---

[4]   18 U.S.C.A. § 3553(a) provides that:

"[t]he Act requires judges to consider the Guidelines "sentencing range established for ... the applicable category of offense committed by the applicable category of defendant," § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid

---

(a) The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for--

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
            (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
            (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

        (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

    (5) any pertinent policy statement--
        (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
        (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7). And the Act nonetheless requires judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care. § 3553(a)(2)."

In this case, the purposes at the base of the Sentencing Reform Act would best be served by a term of incarceration in the form of home detention or community confinement within the appropriate Guideline range of between 6 and 12 months which will allow Charles to continue with the financial and emotional support of his family. This term fairly and reasonably reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence.

Finally, there is no identifiable victim of Charles' offense. The real victims are his young children and wife. A lengthly prison term will remove Charles from their upbringing and would foster the cycle of crime and poverty that the absence of a father so often can engender. Charles implores the Court to allow him the opportunity to demonstrate that this was an unfortunate mistake which he can overcome.

5.  *Conclusion.*

For these reasons, the defendant, Charles A Howard, respectfully requests that the court impose a sentence of pursuant to the Sentencing Reform Act within the range of 6 to 12 months to be served by a term of incarceration in the form of home detention or community confinement.

Dated: July 12, 2006

THE DEFENDANT,
CHARLES A. HOWARD,

By: /s/ Mark J. Albano
Mark J. Albano, Esq.
DALSEY, FERRARA & ALBANO
73 State Street, Suite 101
Springfield, MA 01103
Tel. No.: (413) 736-6971
Fax No.: (413) 746-9224
Email: malbano@dalsey-ferrara.com
B.B.O. No.: 013860

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2006, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies have been sent to the party indicated below which on this date was a non-registered participant:

Ms. Kelly Foster, Probation Officer
U.S. Probation Office
UNITED STATES COURTHOUSE
595 Main Street
Worcester, MA 01608

/s/ Mark J. Albano
Mark J. Albano, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.